The next case is Williams v. Galligan. Good afternoon, your honors. May it please the court. My name is Catherine Rule and I represent the defendant appellant Matthew Galligan, who is the former town manager of South Windsor, Connecticut. The issue on appeal in front of your honors today is whether Matthew Galligan is entitled to qualified immunity based upon his actions on April 20, 2016 at 460 Miller Street in South Windsor, Connecticut. Specifically, in this case, was it reasonable for Mr. Galligan to believe that the cleanup of plaintiff's property that was being used as a scrap metal and junk business and performed pursuant to the town's blight ordinance was constitutional? The plaintiff's brief primarily argues that there was a Fourth Amendment violation. However, the issue on appeal is whether Mr. Galligan, in his individual capacity, is entitled to qualified immunity. Meaning, even if there was a violation, would every reasonable town manager in the shoes of Mr. Galligan have known that his conduct violated plaintiff's constitutional right to be free from unreasonable search and seizure? Mr. Galligan is entitled to qualified immunity if his actions did not violate the clearly established law or it was objectively reasonable for Mr. Galligan to believe his actions did not violate such law. Actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the actions. Excuse me, Ms. Ruehl, isn't the key question here whether there was some sort of emergency that justified skipping any kind of judicial process here? Your Honor, I think that's one prong of the reasonableness analysis. Isn't it clearly established law that, absent some form of exigency, to go on to somebody's property, real property, and remove and seize personal property would ordinarily require some kind of warrant or administrative warrant at least or some court order, wouldn't it? Isn't that clearly established? I believe, yes. Ordinarily, that would be the law. I think if we're looking at the specific context of the facts in this case, the analysis needs to be, was it reasonable for Mr. Galligan to believe that a warrant wasn't necessary? That's right. And the reason that a person might believe that it wasn't necessary is because a reasonable person might think there was some exigency or emergency that made it important to do this quickly. Correct. Based upon the facts in the record, we believe that it was reasonable for Mr. Galligan to think that, as well as think that he was performing a caretaking function, as well as believe that he was acting constitutionally pursuant to a presumptively valid blight ordinance, which allowed him to enter the land. If the ordinance said anybody, the town manager can go onto any property and remove anything that is garbage, that would be clearly not constitutional, wouldn't it? I mean, there has to be some process unless there is some urgency. That's what I'm saying. Isn't that a pretty clearly established proposition that any public official should know? I believe in part, Your Honor, yes. I believe that there needs to be some immediacy, which the facts in this case I think set that for. Well, you see, that's the question that puzzles me. Now, and maybe I'm wrong about this analysis in the first place, but if we agree that what would make this a reasonable thing to do is some form of belief that this is an emergency, then what I really want to get at is, who decides whether a reasonable person would think this was an emergency? Is that a question on which a jury would have something to say, or is that something that the judge, or now we as judges one step removed, should decide? Well, I believe that the answer is a little bit different with the merits of the Fourth Amendment case  So in the district court, qualified immunity was denied to Mr. Galligan for the same reasons that summary judgment was denied on the Fourth Amendment contest. But aren't there disputed issues of fact that would be relevant to both? I mean, I look at the district court's opinion, and the plaintiffs say that this was a segregated section of the backyard holding pallets and plastic bins covered with tarps. And they don't say that there was an emergency or that this was unsafe. And if you thought that everything was in plastic bins and pallets, and on pallets, you might not think that there was a need to go in without a warrant. Your client says he saw liquids leaching out of cans, and there was an x-ray machine, and it was an unholy mess. But isn't that exactly the sort of factual issues that have to be resolved before you can determine whether it was reasonable to enter without a warrant? Normally, yes, Your Honor. Or whether it was reasonable to believe that you, you know, a reasonable officer could believe that he could enter without a warrant. Correct, Your Honor. Normally, the answer would be yes. We have kind of a novel instance here in which we identified all our issues of material fact, and the plaintiff did not file any 5062 statement nor any additional material facts. So we're at the sort of procedural posture where all of our facts were deemed admitted by the plaintiff. And he admits in his appellee briefing that there are no issues of fact. So it's kind of a novel factual procedural posture that we're in right now, Your Honor. Well, there are different orders of fact, right? I mean, there are photographs in the record, aren't there? There are, Your Honor. So I've looked at those photographs, and it certainly looks like something that if I lived next door I would be very unhappy about. But that's a different question than whether there's something going on there that a reasonable person would think is an emergency. I'd want it cleaned up, but I don't know that I would think that it's a – it better be cleaned up today without any further ado after it's been that way for years, actually. So wouldn't a jury be positioned to say, well, we've heard everybody's testimony about this, we've looked at the pictures, and we don't see anything oozing, and we don't think that a reasonable person would have assumed that it was necessary to act urgently. Is that not itself a factual determination about what a reasonable person might think in that circumstance?  I believe that a juror would determine that based upon exigency and a lesser expectation of privacy and that it was a residential property and they were admittedly running a business out of their property and based upon the execution of a presumptively valid ordinance. Now, Ms. Coole, this is Judge Kranitz. Assuming all that you have been saying in response to these questions is entirely accurate, at the end of the day, we're talking about qualified immunity. Is that right? Yes, Your Honor. And if I understand your position, you are reminding us that, as you put it in the – or those who knowingly violate the law. Yes, Your Honor. And is there any suggestion in this record that this city manager, town manager, knowingly violated the law or was plainly incompetent? There is not, Your Honor. In fact, an examination of the record as well as the video that the plaintiff took at the time sets forth that he says, oh, I just talked to the town attorney and he says it's okay for me to go on. And, you know, there's in fact information in the record to the contrary. The town attorney had himself gone to this area and there's, I believe, some part of the record in which he explains his visit. Is that right? Yes, Your Honor. And in fact, the plaintiff talked to the town attorney the night before this happened. Yeah. And you're also relying on what is, I think, a particularly relevant passage from Pearson v. Callahan. And if I may quote it, the protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based upon mixed questions of law and fact. Do you remember that passage from Pearson v. Callahan? I do, Your Honor. And what is it, you're prepared to, I mean, at the end of the day, your interest is in qualified immunity on the theory that it's possible that it was a mistake of fact and it's possible that it was a mistake based upon mixed questions of law and fact, that he was confused, but that under the circumstances he was not being plainly incompetent or knowingly violating the law. That's your argument, right? That's exactly right, Your Honor. And reasonable officers could certainly disagree on the constitutionality of his conduct, but that would also entitle him to qualified immunity. Thanks very much. Thank you. We'll hear from the appellee. And you've reserved two minutes for rebuttal. Thank you, Your Honor. Yes, good afternoon. Attorney Ed Kamen for the plaintiffs below, Kristen Norton and Rock Williams. I just want to clarify a few statements made by counsel. The plaintiffs were not running a scrap metal and junk business out of their property. They're not running a business out of the property. And no one ever saw any leaking liquids at the property either. The property, as one of the, Your Honors, characterized previously is correct. When they looked over the fence, all they could see were pallets with bins on top covered with tarps. And so no one saw anything. No one had any idea what was underneath the tarps. The notion that there were accident circumstances which justified the intrusion is false. Mr. Kamen, when were the photographs taken that are part of the record? You know, there are photographs that go back years. And we have had many hearings in many courts, state court, federal court, and the bankruptcy court, where they tend to pollute the evidence with photographs that go back several years. And so it's very difficult for me. I don't have the photographs in front of me at the moment. But there are photographs from the front of the house. The town instructed the refuse carrier to stop picking up the waste. There are photographs from the property that show the property in the midst of the cleanup. Mr. Kamen, Mr. Kamen, I think that Judge Cabranes is trying to pose a question. Mr. Kamen, if you would just please hold off and stop talking for a moment. I'm sorry. Please catch your breath. Okay. I mean, I had to whistle to try to get somebody's attention. My God. Now, frankly, Mr. Kamen, my train of thought has been disturbed by this experience. Let me ask you, Mr. Kamen, you're not suggesting, are you, that the town manager here was plainly incompetent or knowingly violated the law? Are you claiming that? Yes, I am. And how did he knowingly violate the law? Well, I'm claiming he's plainly incompetent. And I would also say, because he was part of the process that led to the revised blight ordinance. And all he had to do was read that ordinance. And there should have been notices sent to my client, or the minimum, they should have at least brought an action, gone to state court, and they could have resolved this matter in a matter of weeks or a few months. But you're aware of the fact that he had the advice of council, of town council, who presumably is experienced in these matters. He testified that he went there because he was concerned about runoff from rain leaking into a local brook. Yeah, not an inappropriate concern, right? Well, it's an appropriate concern, but it does not give rise to an exigent circumstance. That may be. Well, maybe that's right, Mr. Kamen. Maybe it is not an urgent circumstance. But if he said, I'm concerned about this, and talked to the town attorney, and the town attorney said, well, I think then you can go, and you don't need to wait for a court proceeding. Wouldn't that give him immunity right there? He's not a lawyer. He has a lawyer. I don't believe that, Your Honor, because there is existing precedent in Connecticut that would defeat the defense of qualified immunity. And that's the case of Basra versus Chemerovsky. It's a 2012 case, and it dealt with administrative searches, and the Connecticut Supreme Court said back in 2012 that administrative searches must comply with the Fourth Amendment. Well, that doesn't say anything that's useful to me in this moment. What I'm asking you is, if the town manager, who's not a lawyer, expresses his, tells the town attorney what his concerns are, and the town attorney says, that sounds to me like exigency, and I think you're within your legal rights to take action immediately. Why is, and is that not what, are you disputing, is there a dispute of fact as to whether he consulted an attorney and what the attorney told him? Yes, Your Honor, because that's a new argument to me, that he was consulting the town attorney. I know the town attorney showed up during the midst of the cleanup. He was not there in the morning when they first arrived and broke through the fence. And that's, you can, if you watch the video, you'll see he was not there. But he, Mr. Galligan testified that, to what I said earlier, that he was concerned about runoff leeching into the local brook. So you're not aware of any evidence that he consulted the town attorney in advance, is what you're saying? Correct. Okay. So the, and Your Honor, I would just say that, just really in closing, that, you know, we believe the defendant, he violated the plaintiff's rights. There was, the conduct, the unlawfulness of the conduct was clearly established at the time, based on the Boggs versus Chemerinsky case. And we, the defendant was not relying on advice from legal counsel. He acted independently. He had his own agenda. And I think if he did retain legal advice, he would have been told to follow the dictates of the local plight ordinance, provide notice to the plaintiffs, or at least, or go to local state court and resolve the differences in a peaceful manner. And Mr. Tanner, just one quick question. The ordinance itself, does the ordinance itself have any exception for emergency? Yes, it does. Okay. So if he had just read the ordinance, putting aside whether the ordinance is in this respect constitutional, he would see that if there is an emergency, he could act. That is correct. And so, again, we come back to the question of, would a reasonable person have thought there was an emergency? Correct. Okay. We'll hear rebuttal. Thank you, Your Honor. Just quickly in rebuttal, the discussions of the town attorney are certainly not a new novel argument. A video taken by plaintiff's client and attached to the record shows that Mr. Galligan had just spoken to the town attorney. He said very clearly, I'm here on the advice of the town attorney. This is 915 at the video. And Mr. Attorney Yadlok's affidavit is attached to the record starting at JA449. So this certainly is not a novel argument. And just very quickly, as to the Bowser case, that is a state case not applicable to clearly established analysis. And if there are no further questions, I will rest. Thank you both. We'll take the matter under advisement. Thank you, Your Honor. So that's the last case on the calendar to be argued. So I'll ask the clerk to adjourn court. Court stands adjourned.